UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

KATHLEEN A.,[1]

        Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:20-cv-00521-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Kathleen A. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

Plaintiff originally filed for DIB on March 23, 2017, alleging disability beginning on March 20, 2017. Tr. 155-56. The Commissioner denied plaintiff's application for benefits initially on August 3, 2017, and upon reconsideration on August 23, 2017. Tr. 71, 82. Plaintiff

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

requested a hearing before an Administrative Law Judge ("ALJ"), which took place on January 31, 2019. Tr. 26-60. After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Steve De Monbreum issued a decision on March 15, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 13-20. The Appeals Council denied plaintiff's request for review on February 19, 2020, making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. Tr. 1-3; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "'Substantial evidence is more than a mere scintilla but, less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett*, 180 F.3d at 1098-99). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 416.1520(a)(4)(2012). *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). At step five, the burden shifts to the Commissioner to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 416.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id*. If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; see also *Bustamante*, 262 F.3d at 953–54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 20, 2017. Tr. 15. At step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease, obesity, and dysfunction of joints. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled any listings. Tr. 15. The ALJ next determined that plaintiff had the residual functioning capacity ("RFC") to perform "light work" as defined in 20

C.F.R. § 404.1567(b), except that she could only occasionally operate foot controls bilaterally."
Tr. 17.

At step four, the ALJ found plaintiff could perform her past relevant work as a housekeeper (listed as Cleaner, Housekeeping, DOT 323.687-014). Tr. 19.

Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly discounting her testimony; (2) improperly rejecting lay witness testimony; (3) failing to include appropriate standing and walking limitations in her RFC; and (4) determining that she is able to perform her past work as a housekeeper. Pl.'s Br. 3-20.

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ recounted plaintiff's claims and testimony. Tr. 13-19. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 17. In particular, the ALJ pointed to lack of corroborating medical evidence and cited plaintiff's inconsistent and conservative treatment. Tr. 17-18.

### A. Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence may not form the ALJ's sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). When coupled with other

permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Here, plaintiff stated in her August 2017 Disability Report, "I have to lay down on a couch or bed for several hours during the day due to back and hip pain." Tr. 254. She repeated this assertion in her October 2017 Disability Report, where she stated, "I lay down most of the day because of my back and hip pain." Pl.'s Br. 15; Tr. 269. At the hearing, plaintiff testified that she stopped working in March 2017 "[b]ecause [of] constant back and hip pain, and I have bursitis in my hips. And the medication the doctor gives me doesn't do a thing about it." Tr. 38. She also testified that she spends about four hours a day lying down in a recliner chair or the couch "[f]or my back and my hips because they - - I can only stay on them and take it so long." Tr. 45, 49-51.

In finding plaintiff's reports were not consistent with the medical record, the ALJ observed the "x-ray of the lumbar spine showed no significant spondylosis, no evidence of vertebral compression fracture, no significant listhesis and the paraspinal soft tissues were without significant abnormality." Tr. 17 (citing Tr. 310, 312); *see also* Tr. 319 (examination notes stating, "the only positive finding is a mild dextroscoliosis on the thoracic x-ray. Lumbar spine x-ray was normal."). The ALJ also observed that Dr. Kauffman's examination notes indicated "multiple organic findings[.]" Tr. 18 (citing Tr. 317); *see* Tr. 316 (noting "some evidence of poor effort and inconsistencies" and plaintiff's ability to "sit[] comfortably," "easily . . . transfer from the chair to the examining table and back[,]" and her ability to walk and take her shoes off "without difficulty"). Indeed, Dr. Kauffman found the functional assessment

"somewhat difficult due to the . . . subjective complaints outweighing objective findings." Tr. 319. As the ALJ discussed, Dr. Kauffman also identified a particular contradiction between plaintiff being able to "only flex and move her back a small amount," Tr. 18 (citing Tr. 318), with her ability to extend her legs from a sitting position, "which would translate to a 90-degree angle between her trunk and legs." *Id.* The ALJ further discussed plaintiff's three visits with her treating physician, Dr. Kim, and noted plaintiff's report of "bilateral back pain that started two days prior." *Id.* Additionally, the ALJ pointed to plaintiff's contradictory comment to Dr. Kim that standing improved her symptoms while "lying down in bed and sitting on the couch would make her symptoms worse." *Id.*

As these details demonstrate, the ALJ did not rest his decision on "general assertions that the claimant's testimony is not credible." Pl.'s Br. 15. Instead, the ALJ's decision identified the kind of "specific, clear, and convincing reason[s]" reviewing courts require to "ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 489, 492; s*ee Tatyana K.*, 2019 WL 464965 at *4 ("When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant.") (citations omitted). The ALJ did not err in discounting claimant's subjective system testimony based on objective medical evidence. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

      **B.**     **Conservative and Inconsistent Treatment**

"A conservative course of treatment is a proper basis on which to reject a claimant's testimony of severe impairment." *Tatyana K.*, 2019 WL 464965 at *4; *see also,*

*Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may properly rely on the fact that only conservative treatment has been prescribed).

As the ALJ observed, there are "minimal records" in plaintiff's file and the medical reports that do exist show treatment plans that consist of conservative measures such as over-the-counter medications, ice/heat treatments, stretching exercises, and physical therapy. Tr. 14-18; *see Tommasetti*, 533 F.3d at 1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Treating physician Dr. Kim variously prescribed ibuprofen, "home stretching exercises," amitriptyline, asper cream, and pool exercises. Tr. 18 (citing Tr. 333, 335, 337). Dr. Kim also recommended that if plaintiff's symptoms did not improve within two weeks, she should start physical therapy, which is another form of conservative treatment. *Id.* (citing Tr. 333)*; Tommasetti*, 533 F.3d at 1040.

Plaintiff acknowledges that the ALJ described her treatment as "conservative," but argues that the pain medications did not improve her symptoms. Pl.'s Br. 16-17; *see* Tr. 38. However, the ALJ pointed out that Dr. Kim noted "some improvement in symptoms" after plaintiff attended five physical therapy sessions. Tr. 18 (citing Tr. 335); *see* Tr. 341-351 (physical therapy notes that show "[p]atient is making gradual progress toward goals," and "met" her short-term pain goal to "decrease pain complaints from 2-8/10 to 1-6/10 for 90% of the day"). As plaintiff acknowledges, "[a] favorable response to conservative treatment undermines a claimant's reports of disabling pain or limitations." Pl.'s Br. 16 (citing *Tommasetti*, 533 F.3d at 1039-40). Thus, the ALJ was entitled to discount plaintiff's credibility due to her conservative treatment. *See Weikel v. Berryhill*, No. 1:16-CV-01336-SKO, 2018 WL 1142194, at *16 (E.D.

Cal. Mar. 2, 2018) ("Based on the above conservative treatment, which the record shows resulted in a lessening of her symptoms, the ALJ was entitled to discount Plaintiff's credibility.")

Plaintiff also argues that the ALJ erred in discounting her testimony because the record "does not show that the claimant consistently sought treatment for her pain." Tr. 17. Before an ALJ finds that a claimant's failure to seek treatment undermines the claimant's credibility, the ALJ must first "consider[] possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of [her] complaints." Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016).

Here, plaintiff stated in her October 2017 Disability Report that she had not scheduled further appointments with her doctor because "I cannot afford the doctor visit since I have no income and my husband is retired and living on his income alone." Tr. 267-9. The ALJ did not discuss those reasons in his decision. *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (acknowledging that an "'unexplained or inadequately explained failure to seek treatment may be the basis for an adverse credibility ruling,'" but noting that "'disability benefits may not be denied because of the claimant's failure to obtain treatment she cannot obtain for lack of funds'" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), and *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

Nevertheless, any error was harmless. *Batson*, 359 F.3d at 1195–97 (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). As the Ninth Circuit noted in *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008), an ALJ's error in determining credibility may be deemed harmless "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility]

conclusion[.]'" *Id*. (citing *Batson*, 359 F.3d at 1197). Here, the ALJ provided "specific, clear, and convincing reasons" for discounting plaintiff's subjective symptom testimony based on inconsistencies with objective medical evidence and conservative treatment and improvement. Thus, any error did not "negate the validity" of the ALJ's credibility assessment and therefore was harmless. *See Batson*, 359 F. 3d at 1197.

## II.     Lay Witness Testimony

Plaintiff contends that the ALJ improperly rejected lay witness statements from her husband, parents, sister, and son. Pl.'s Br. 11. The ALJ considered third-party statements from plaintiff's family members, said they cannot be characterized as "disinterested," and gave their statements "little weight." Tr. 19 (citing to Tr. 257, 295, 296, 297, 298).

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.945(a)(3), 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918–19. The ALJ may reject a third party's testimony "upon giving a reason germane to that witness." *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). However, "the fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (quoting *Smolen v. Chater*, 80 F.3d at 1289).

Here, the ALJ questioned the accuracy of the statements from plaintiff's family members and found they could not be disinterested "by virtue of the relationship" with plaintiff. Tr. 19. This reason, without more, constitutes improper grounds for rejecting the lay witness statements. The ALJ therefore erred in rejecting the lay witness testimony without proper justification. *See Florina P. v. Berryhill*, No. 3:18-CV-00256-HZ, 2019 WL 413553, at *10 (D. Or. Feb. 1, 2019)

(finding ALJ erred by rejecting testimony from claimant's mother based on familial relationship); *see also Taylor R. v. Comm'r of SSA*, No. 19-CV-04570-SK, 2020 WL 6820944, at *10 (N.D. Cal. Sept. 29, 2020) (noting that a family member is "not required to be a disinterested third-party to have credibility" and finding ALJ erred by rejecting opinions based on a family relationship to plaintiff).

But again, this court must determine whether the error was harmless. In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Ninth Circuit extensively discussed the harmless error analysis and reaffirmed the "long-settled rule that [courts] will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence *in the record as a whole*.'" *Id.* at 1121 (quoting *Stone v. Heckler*, 761 F2d 530, 531 (9th Cir. 1985)) (emphasis in original). The court found the ALJ erred when she failed to explain her reasons for disregarding the lay witness testimony. *Id.* at 1104. To determine whether the error was harmless, the court first found that the lay witness testimony "described the same limitations" as the claimant's own testimony and next determined that the ALJ rejected claimant's testimony "based on well-supported, clear and convincing reasons." *Id.* at 1122. After noting that "the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony," the court held that the ALJ's decision was supported by substantial evidence and was harmless. *Id.*

Here, in a similar vein, the statements from plaintiff's family members significantly overlap her reports of pain and functional limitations. For example, her parents, husband, son, and sister each described plaintiff's difficulty with sustained periods of sitting, standing, walking, and lying down. *See* Tr. 257, 295, 296, 297, 298. They also referred to back and hip pain plaintiff experiences from sitting, and described her lying down on a recliner or couch. *Id.*

As discussed above, plaintiff made identical statements, and the ALJ properly discounted her testimony due to a lack of corroborating evidence in the medical records and conservative treatment plans. As the court found in *Molina*, "where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" 674 F.3d at 1121 (citation omitted). Further, "even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Id.* (internal quotation marks and citations omitted).

Like *Molina*, this court finds that the ALJ's failure to properly consider lay witness testimony was harmless as it was "inconsequential to the ultimate nondisability determination." *Id.* at 1122.

### III. The RFC's Walking and Standing Limitations

Plaintiff next argues that the ALJ erred at step three of the sequential evaluation process because he failed to include in the RFC the "uncontradicted standing/walking" limitations assessed by examining physician, Dr. Kauffman, and by state agency physicians, Drs. Davey and Davenport.

On July 19, 2017, plaintiff attended a consultative examination conducted by Dr. Kauffman. Tr. 18. Dr. Kauffman determined plaintiff's maximum standing capacity to be "up to six hours." Tr. 319. Further, Dr. Kauffman found that plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and he limited plaintiff to no more than frequent climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 18. The ALJ considered Dr. Kauffman's opinion, found it "consistent with the objective evidence in the file

that does not show any 'significant' problems with the claimant's back," and gave it "some weight[.]" Tr. 18.

State agency consultants Drs. Davey and Davenport reviewed plaintiff's file at the initial and reconsideration level, and both determined, like Dr. Kauffman, that plaintiff has a standing limitation of "about 6 hours in an 8-hour day." Tr. 68, 79. Drs. Davey and Davenport, however, assessed plaintiff's other exertional limitations less restrictively than Dr. Kauffman, and found that plaintiff could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. *Id.* The ALJ gave "some weight" to the opinions of Drs. Davey and Davenport but found the evidence supports a more restrictive RFC than the "Medium RFC" level that was identified by each physician. Tr. 17. Thereafter, the ALJ determined that plaintiff had the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b)," except that she could only occasionally operate foot controls bilaterally. Tr. 16.

While it is true that the RFC made no explicit reference to plaintiff's standing and walking limitations, Social Security Regulation ("SSR") 83-10[2] makes it clear that the "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See* 1983 WL 31251, at *6. Indeed, as recently noted in *Guillermina R. v. Saul*, courts relying on SSR 83-10 "have found that an ALJ's reference to 'light work' . . . is widely understood to encompass the limitation to stand/walk for six hours in an eight-hour day." No. 5:19-cv-02315-AFM, 2020 WL 5440341 (C.D. Cal, Sept. 10, 2020)*; see also Goodman*, 2017 WL 4265685, at *7 (rejecting the argument that RFC was deficient because it failed to

---

[2] "Though Social Security Rulings do not have the force of law, they 'constitute Social Security Administration interpretations of the statutes it administers and of its own regulations.'" *Revels v. Berryhill,* 874 F.3d 648, n.2 (9th Cir. 2017) (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989), and concluding, "[t]herefore, 'we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations'")

13 – OPINION AND ORDER

include a standing restriction of six out of eight hours, finding "such a restriction is part and parcel of the definition of 'light work'"), *aff'd*, 741 F. App'x 530 (9th Cir. 2018).

Thus, as the court found in *Guillermina R.*, "by limiting plaintiff to light work, the ALJ fairly incorporated the limitation to walking/standing for a total of six hours in an eight-hour workday." 2020 WL 5440341 at *3.

## IV. Classification of Plaintiff's Past Work

Plaintiff also argues that when the ALJ found in step four that she could perform her past work as cleaner, housekeeper, DOT 323.687-014, he erroneously classified her past work as a housekeeper according to the "least demanding function" rather than how it is "generally performed." Pl.'s Br. 8. According to plaintiff, had the ALJ properly classified housekeeping work as generally requiring eight hours of standing or walking, he could not have found her capable of performing her past work as a housekeeper in step four given the six-hour standing/walking limitation assessed by the three physicians. Pl.'s Br. 8-10.

Plaintiff cites no caselaw to demonstrate that housekeeping work generally requires all-day standing, and instead relies on this brief exchange at her hearing between plaintiff's counsel and the VE:

> [Counsel]: "[W]ith regard to the housekeeping job, would an individual be allowed to sit for two of eight hours in that job?"
> [VE]: "No. That's not noted in the DOT . . . they're on their feet the entire eight hours."

Tr. 38. Plaintiff also points to the DOT description below for "Cleaner, Housekeeping – DOT 323.687-014" and argues that the definition itself shows such workers must be constantly standing or walking to complete all required tasks:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes

supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

Pl.'s Br. 9. According to plaintiff, "[i]t is obvious and apparent from common experience that all the various housekeeping described by the DOT above involve standing or walking." *Id*.

Plaintiff, however, overlooks DOT 323.687-014's classification of housekeeper as "light work," as well as pertinent regulations that define "light work" as requiring "approximately 6 hours of an 8-hour workday." *See* SSR 83-10 at *6; *see also*, *Goodman*, 2017 WL 4265685 at *8 (citing SSR 83-10 and rejecting the "incorrect" argument that an RFC for 'light work' "fails to acknowledge a restriction to standing or walking for 6 hours in an 8-hour workday."); *Davis v. Colvin,* Case No. 6:15-cv-0044-SI, 2016 WL 424992, at *9 (D. Or. Feb. 3, 2016) (finding that the plaintiff, who was "limited to walking or standing six hours in an eight-hour workday," could perform the "light work" of "an office cleaner"); *Bailey v. Astrue*, No. EDCV 09–1452–OP, 2010 WL 1233459, at *6 (C.D. Cal. Mar. 22, 2010) (stating that "[t]he jobs available at the light level of work do not conflict with" a six-hour "standing/walking limitation"); *see also Holman v. Shalala*, 42 F.3d 1400, at *2 (9th Cir. 1994) ("Light work requires six hours of standing or walking[.]").

Notably, the VE cited no authority for the assertion that a housekeeper must stand all day. *See Goodman v. Berryhill*, 741 Fed. App'x. 530, 531 (9th Cir. 2018) (finding the ALJ reasonably rejected VE testimony regarding the amount of standing/walking in a given job where the testimony contradicted the DOT definition of "light work" and where the VE "provided no support for his conclusion[.]"). Further, albeit rather confusingly, the VE also testified that a "hypothetical individual with the same age, education, past work experience as the claimant"

who has the RFC to perform a range of "light exertional work activity" *could* perform the housekeeping job as defined in DOT 323.687-014. Tr. 39. Thereafter, the ALJ found that plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and determined that plaintiff could perform her past relevant work as a housekeeper. Tr. 17. Because there is no dispute between plaintiff's standing/walking limitations as established by medical evidence and the definition of "light work" under the DOT, it is reasonable to infer that the ALJ properly rejected VE testimony that was inconsistent with the DOT. *See Mitzi D. v. Saul*, No. SA CV 18-01065-DFM, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-10 has been in play for over thirty years, there is no reason to think the VE understood light work to encompass anything other than approximately six hours of standing or walking.") (citations omitted). Thus, this court finds that the ALJ properly classified plaintiff's past work as a housekeeper as "light duty."

## ORDER

The Commissioner's Decision is AFFIRMED.

IT IS SO ORDERED.

DATED June 7, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge